UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN JOSE PEREZ TINOCO,<br><br>               Petitioner,<br><br>   v.<br><br>LAURA HERMOSILLO, et al.,<br><br>               Respondent. | CASE NO. 2:26-cv-00209-BAT<br><br>**ORDER GRANTING IN PART PETITION FOR HABEAS CORPUS** |

      Immigration detainee Juan José Perez Tinoco petitions the Court to order Respondents to (1) release him from custody immediately, (2) permanently enjoin his re-detention absent notice and a hearing, (3) declare that his re-detention violates due process, and (4) award attorney's fees. The Court **GRANTS** the petition in part for the following reasons.

      Petitioner, a national of Honduras, most recently entered the United States in June 2019 with his partner and two children. Dkt. 1 (petition) at ¶ 3. He was apprehended and detained at the border. Since Petitioner had previously been removed twice from the United States, his prior removal order was reinstated when he arrived for a third time. *Id.* at ¶¶ 1–3. He was released on an order of supervision under the Alternatives to Detention program, which included

ORDER GRANTING IN PART PETITION
FOR HABEAS CORPUS - 1

requirements such as periodic in-person check-ins and GPS tracking. *Id.*; Dkt. 7 (Respondents'[1] return) at 3. While released, he worked primarily in construction and landscaping under a valid work permit pursuant to his order of supervision. Dkt. 1 at ¶ 6.

The parties agree Petitioner complied with the requirements of his order of supervision. *Id.* at ¶ 3; Dkt. 7 at 3. Nevertheless, United States Immigration and Customs Enforcement (ICE) arrested Petitioner when he attended a scheduled check-in on December 19, 2025 and detained him at the Northwest ICE Processing Center in Tacoma, Washington. Dkt. 1 at ¶ 5. He was then classified as subject to a final order of removal, detained pursuant to 8 U.S.C. § 1231. Dkt. 7 at 3. He was not, and has not yet been, given written notice of the basis for the revocation of his release. *Id.* at ¶ 6; Dkt. 1-1 at 4–5; Dkt. 10 at 5. Upon inquiry, his counsel was told he "was on a list" without further explanation. Dkt. 1-2 at ¶ 5. On January 8, 2026, a California immigration judge granted Petitioner's motion to reopen his removal proceedings, vacating his prior removal order and making him eligible to apply for asylum. Dkt. 1 at ¶ 7; Dkt. 1-2 at ¶ 9.

## DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner contends the government revoked his order of supervision without notice or opportunity to be heard in violation of the Due Process Clause of the Fifth Amendment, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V; Dkt. 1 at ¶ 6. He also claims the Department of Homeland Security (DHS) unlawfully violated its own regulations by revoking the order of

---

[1] This opinion uses the terms "Respondents" and "the government" interchangeably to signify all federal Respondents.

supervision, and that the revocation of his order of supervision was arbitrary and capricious agency action in violation of the Administrative Procedure Act. *Id.* He asks the Court to order his immediate release and to enjoin his re-detention absent written notice and a hearing at which the government must prove by clear and convincing evidence that he is a flight risk or danger to the community. Dkt. 1 at 15–16.

## I. Whether Petitioner's Re-Detention Violated Due Process

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights extend "to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

District courts in this Circuit apply the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), in evaluating due process claims like Petitioner's. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F.Supp.3d 1316, at 1321 n.4. Petitioner argues *Mathews* applies; Respondents are silent on the issue. The Court therefore evaluates Petitioner's due process claim under *Mathews*, assessing (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguard" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319 at 335.

First, Petitioner has considerable private interest in his freedom. His interest in not being detained "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Since his release in 2019, Petitioner has built a life for himself, his partner, and his two

children. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). That liberty interest exists regardless of ICE's initial discretion to release him. *Id.* (quoting *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025)).

Second, the circumstances of Petitioner's arrest underscore the high risk of erroneous deprivation of his liberty interest. To date, the government has provided no individualized justification for re-detaining Petitioner. Its return and accompanying declarations do not assert that Petitioner violated any condition of his order of supervision. In similar cases, courts in this District have granted petitions for habeas corpus even where the government <u>did</u> justify re-detaining a noncitizen based on noncompliance with parole conditions, reasoning that those shifting justifications were likely pretextual and in any event insufficient to mitigate the risk of erroneous deprivation of liberty. *See E.A. T.-B.*, 795 F. Supp. 3d 1316 at 1322; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130 at 1137. Here, no justification is provided at all, post hoc or otherwise.

Respondents also do not refute Petitioner's argument that DHS violated its own regulations by revoking Petitioner's order of supervision. The government's return states:

> Revocation of an OSUP is governed by 8 C.F.R. §§ 241.13(i), 241.4(l), and may occur either: (1) if the noncitizen "violates any of the conditions of release," id. §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Whether there is a significant likelihood that the alien may be removed in the reasonably foreseeable future is determined by assessing a series of factors, including "the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries ... and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in

> question." Id. § 241.13(f). Alternatively, certain designated officials may also revoke an OSUP as an act of discretion when revocation is in the public interest. Id. § 241.4(l)(2).
>
> Section 241.13(i)(3) provides that upon revocation, the alien "will be notified of the reasons for revocation of his or her release" and will receive an "initial informal interview promptly" after being detained, to "afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Id. § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." Id. "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." Id. Then, if the alien's request for release is denied, he or she "may submit a request for review of his or her detention . . . six months after [DHS's] last denial of release[.]" Id. § 241.13(j).

Dkt. 7 at 4–5. Despite setting forth the regulations governing re-detention in detail, the government makes no showing that it followed them: no finding of a violation of a release condition or determination of a significant likelihood of removal in the reasonably foreseeable future, no finding that revocation was in the public interest, no notice to Petitioner of the reasons for revocation of his release, and no initial informal interview. Given the government's apparent disregard of its own regulations, the risk of erroneous deprivation of liberty weighs in Petitioner's favor.

Third, Respondents' interest in Petitioner's re-detention is minimal. The government does not claim Petitioner is a danger to the community or a flight risk. In fact, Petitioner appears to have lived in Oregon since 2019 with his partner and children; the record does not indicate he has committed any crime or failed to comply with a condition of supervised release. Respondents identify no interest that would be threatened by, at the least, providing Petitioner with written

ORDER GRANTING IN PART PETITION
FOR HABEAS CORPUS - 5

notice and an opportunity to be heard prior to re-detaining him. This factor also weighs in Petitioner's favor.

The Court concludes that Petitioner has shown, by a preponderance of the evidence, that he is being unconstitutionally held. Petitioner was entitled to due process before being deprived of his liberty interest in continued release. Because no pre-deprivation hearing was held before he was re-detained, his constitutional right to due process was violated. The Court finds immediate release is the most appropriate remedy, as Petitioner's due process interest in his continuing release from custody has been violated. The government's suggestion that Petitioner receive a bond hearing while detained is insufficient to remedy its violation of his constitutional rights. *E.A. T.-B.*, 795 F. Supp. 3d 1316 at 1324 (reasoning that "a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty").

Respondents offer no reason why the Court should deviate from the flood of decisions this District has issued in recent months holding that due process requires DHS to provide noncitizens who were previously released with a notice and an opportunity to be heard prior to re-detaining them. *See, e.g.*, *E.A. T.-B.*, 795 F.Supp.3d 1316; *Ramirez Tesara*, 800 F. Supp. 3d 1130; *Ledesma Gonzalez v. Bostock*, No. 2:25CV01404-JNW-GJL, 2025 WL 2841574, at *7–9 (W.D. Wash. Oct. 7, 2025); *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *2–4 (W.D. Wash. Sept. 17, 2025). Several of these are indistinguishable as to relevant facts, yet the government's return fails to address their line of reasoning. "The Court rejects any suggestion that government agents may sweep up any person they wish and hold that person without consideration of dangerousness or flight risk so long as the person will, at some unknown future point in time, be allowed to ask some other official for his or her release, as this

ORDER GRANTING IN PART PETITION
FOR HABEAS CORPUS - 6

course of action offends the ordered system of liberty that is the pillar of the Fifth Amendment." *E.A. T.-B.*, 795 F.Supp.3d 1316 at 1323 (cleaned up).

## II. Whether Petitioner Is Detained Pursuant to 8 U.S.C. §§ 1225(b)(2) or 1226(a)

Petitioner was originally re-detained on December 19, 2025 pursuant to 8 U.S.C. § 1231, the provision governing detention and release of noncitizens who have been ordered removed, as he was then subject to a removal order. Dkt. 7 at 3. Respondents argue that, because Petitioner's removal order has since been vacated by an immigration judge, he is now subject to mandatory detention under 8 U.S.C. § 1225(b)(2) (not discretionary detention under 8 U.S.C. § 1226(a)). *Id.* at 7. Therefore, they argue, his claim that the government unlawfully revoked his order of supervision is moot. *Id*. Petitioner responds that the Due Process Clause applies regardless of the statutory authority for detention, so the government was obligated to comply with due process in detaining Petitioner even if detaining him under § 1225(b)(2). Dkt. 10 at 3.

The Court agrees with Petitioner. Respondents' argument does not follow. The government's return does not explain why, if Petitioner was detained pursuant to 8 U.S.C. § 1231, a later change in the statutory authority for his detention would retroactively nullify the government's obligation to comply with due process in detaining him in the first place. Petitioner is entitled to due process regardless of the statutory authority for his detention. *Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932 (W.D. Wash. Dec. 30, 2025) (Tsuchida, J.) (applying *Mathews* and granting petition for habeas corpus despite finding petitioner was detained under § 1225); *Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385 (S.D. Cal. Nov. 25, 2025) (petitioner's parole was improperly revoked, mooting the question of which statute applied to her detention).

In any event, the government's position that § 1225 applies is unavailing; "[t]he

overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-CV-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases); *see also Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (collecting cases). And the government concedes that this Court has previously decided that another noncitizen essentially in Petitioner's position was subject to § 1226. Dkt. 7 at 7; *see Singh v. Wamsley*, 2:26-cv-00088-BAT, 2026 WL 248372, at *1 (W.D. Wash. Jan. 30, 2026).

Because the Court grants the petition for habeas corpus on other grounds, it declines to reach the argument based on the Administrative Procedure Act. *See* Dkt. 1 at 14. The Court also denies without prejudice Petitioner's request for a permanent injunction prohibiting his re-detention during his removal proceedings absent written notice and a hearing, *id.* at 15–16, as Petitioner has not addressed his entitlement to an injunction under *Winter v. Natural Resources Defense Council Inc.*, 555 U.S. 7 (2000). As a valid reason could in theory arise justifying a future detention, e.g. a violation of release conditions, such injunctive relief is too sweeping to enter without briefing on its precise parameters.

## CONCLUSION

The Court **ORDERS** as follows:

1. The petition for writ of habeas corpus, Dkt. 1, is **GRANTED**.

2. Respondents shall immediately **RELEASE** Petitioner by no later than one working day from the date of this Order and shall file a certification that he has been released by no later than two working days from the date of this Order.

3. Petitioner's request for an injunction prohibiting his "re-detention during the pendency of his removal proceedings absent written notice and a hearing prior to redetention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks," Dkt. 1 at 15–16 is **DENIED** without prejudice to renewal. The Court's denial of injunctive relief should not be construed as an invitation to DHS to re-detain Petitioner without adhering to its own regulations governing custody determinations.

4. The Court will entertain a motion for attorney fees and expenses under the Equal Access to Justice Act. Any such motion should be filed within 21 days of this Order and noted under Local Civil Rule 7(d)(3).

DATED this 12th day of February, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge